IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C3725 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| IKEA Illinois, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Defendant IKEA Illinois LLC's ("Defendant" or "IKEA") Motion for Summary Judgment against Plaintiff Terrance Jones ("Jones"), a former IKEA employee who alleges that the company discriminated and retaliated against him on account of his race – African American. Jones further alleges that IKEA defamed him when one of its employees made comments about Jones's alleged promiscuity. For the following reasons, the motion is granted as to Plaintiff's claims for discrimination and retaliation. The Court relinquishes jurisdiction as to Plaintiff's state law claim for defamation.

**I. BACKGROUND**

A. FACTS

The following facts are undisputed. IKEA hired Jones on June 25, 2001 to work part-time in the furniture department at the company's Schaumburg, Illinois location. IKEA terminated Jones's employment on October 6, 2006 for reasons explained below. Throughout his employment, Jones received several written warnings and one "verbal coaching" with respect to his failure to show up for work either on time or at all. Nevertheless, a performance

evaluation completed on December 28, 2005 by Jones's manager at the time, Jim Nutini ("Nutini"), indicated that Jones was meeting the company's expectations. For this, Jones received a $.30 per hour increase in pay. The following year, in 2006, Jones applied for a promotion using IKEA's new computer system.

Nutini testified in a written declaration that he made a mistake using IKEA's new job posting and application computer system and, as a result, he did not realize that Jones had applied for a promotion. IKEA's Human Resource Manager, Paul Clark ("Clark"), confirmed that Nutini made a mistake using the company's new system and therefore never saw Jones's application. In response to IKEA's failure to consider him for a promotion, however, in March 2006 Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that IKEA chose not to interview Jones for a promotion because of his race. The parties consented to mediation before the EEOC.

On May 16, 2006, after mediation, the parties settled Jones's claim. In line with the agreement, Jones continued his employment with IKEA, received a promotion to the position of Sales Coordinator in the Self Serve Department (although the parties refer to the new position as "shop keeper first floor supervisor" during Jones's deposition), obtained an increase in pay and accepted additional compensation, or "backpay," retroactive to November 27, 2005. Jones stayed in his new position until October 6, 2006, when IKEA terminated Jones after an incident involving the company's time clock system.

IKEA maintains an employee/coworker handbook (the "Handbook") that Jones read when he started working with IKEA in 2001. The Handbook is made available to all employees at the store and is kept at all times on a manger's desk in the store's mezzanine area. Jones acknowledged that he had access to the handbook and testified at his deposition that "it was there

2

[on the desk] whenever we had time to go read it." Def.'s Rule 56.1 Statement, Ex. A, Jones Dep. ("Jones Dep.") at 80-81. According to the Handbook, employees are entitled to an unpaid, 30-minute meal break, with a five minute grace period, for every shift that they work more than five hours. Id., Ex. E, Handbook at 63. To keep track of employees' time, employees are required to "clock-in" and "clock-out" at the beginning and end of their meal break by swiping their ID badges through the store's time-keeping system, which is manufactured by a company called "Kronos." Handbook at 65; Def.'s Rule 56.1 Statement, Ex. B, Decl. of Paul Clark ¶ 10. The parties simply refer to the time keeping system as "Kronos." In the event there is problem with Kronos and the employee is unable to record his or her time, employees are required to complete a time adjustment/missing punch form and leave it on a manager's desk so that the manager can adjust the employee's time accordingly. Id., Ex. C, Decl. of Jim Nutini ¶ 10. A failure to follow these procedures may result in corrective action, up to and including termination of employment. In fact, according to the Handbook, any of the following conduct may result in termination of employment:

- Falsification of company records including, but not limited to, employment applications and records, medical records, expense reports, time cards/records, missing punches, sales, credit or refund transactions, merchandise vouchers, gift certificates, or taking/giving unauthorized markdowns;

- Any act of dishonesty;

- Clocking in or out [swipe in/out] for another coworker or allowing someone else to clock in or out for them; falsifying a timecard, or missing punch form; editing a coworker's time without their knowledge; taking breaks in excess of the time issued without authorization;

- Asking or allowing a coworker to work "off the clock"; or working "off the clock";

- Unacceptable performance, unexcused attendance and/or tardiness; excessive unexcused absenteeism and/or tardiness; unreported absence (no call, no show).

3

See Handbook at 85-86.

On October 1, 2006 Jones and two of his coworkers, Tim Maultsby (African American) and John McCarthy (white), left the IKEA store for their allotted 30-minute lunch break. As they exited the building, Jones and his coworkers attempted to "swipe-out" at the Kronos time clock located on the building's first floor, although the system did not register their time. Jones was aware that the system did not register his or the others' time. He was also aware that the Kronos time clock located on the building's second floor was working properly, since he used it to register his time at the beginning of his shift. But Jones neither registered his time using the second floor Kronos system, nor did he sign out using the company's log sheet in IKEA's security/loss prevention office. In short, Jones and the others left the store without recording the time they began their 30-minute break.

When Jones returned to the store from his lunch break, he used the Kronos system on the second floor to "swipe out," thus recording his time as though he had just left the store. Jones then proceeded to work and, approximately 45 minutes later, he "swiped in," thus recording his time as though he had returned from a 45-minute lunch break. Jones maintains that he attempted to contact his supervisor regarding his time, but for some reason Jones was unable to reach a supervisor. Either way, Jones ultimately did not inform any manager or supervisor that his time did not accurately reflect when he left or returned for lunch.

Meanwhile, Nutini could not find Jones, although the system indicated that Jones was working his normal shift. Nutini searched the store for approximately 30 minutes and thereafter contacted IKEA's Loss Prevention Department to determine Jones's whereabouts. After reviewing the store's videotapes, Loss Prevention reported to Nutini that Jones and the others left the store at 1:55 p.m. without recording their time. The tapes further revealed that Jones and the

others returned to the store at 2:49 p.m. Loss Prevention then obtained the Kronos records for that day and compared them with the videotape results. The Kronos records reflected that Jones left for his lunch break at 2:55 p.m. and returned from lunch at 3:40 p.m. Based on this, Loss Prevention reported to Nutini that Jones and the others committed what amounted to "time theft," which, according to the Handbook, may result in termination of employment.

On October 6, 2006 Nutini met with a member of IKEA's Human Resources Department and with the Assistant Store Manager to discuss the situation. At the meeting, the trio determined that Jones and the others manipulated the time clock on October 1, 2006 and committed time theft. All three employees were terminated as a result of the incident. On his final incident report, or "Corrective Action," Jones expressly admitted, "I think if anything, time theft occurred when I left the building for an hour and I came back and then clocked out. My manager was getting on me about missing time punches but I was present on the floor after I clock [sic] out around 3:00." See Jones Dep. at Ex. Jones 2.

## B. Procedural History

On January 4, 2007 Jones filed with the EEOC a Charge of Discrimination against IKEA, alleging that he had been "subjected to different terms and conditions of employment" and "discriminated against based on retaliation...." Def.'s Rule 56.1 Statement, Ex. D, EEOC Charge. On February 13, 2007 the EEOC issued a notice of right to sue, thus allowing Jones to bring his claims to federal court. On July 10, 2007 Jones filed his complaint in this Court. IKEA filed a motion for summary judgment on August 6, 2008, which is fully briefed and now before the Court.

5

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is proper when there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007) (quoting Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party, who, in this case, is Jones. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 780 (7th Cir. 2007). But the court's favor toward the nonmoving party does not relieve that party of the obligation to "do more than simply show that there is some metaphysical doubt as to the material facts." Waukesha Foundry, Inc. v. Indus. Eng'g, Inc., 91 F.3d 1002, 1007 (7th Cir. 1996) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince the trier of fact to accept its version of the events." Steen v. Meyers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)). The mere existence of some alleged or possible factual dispute will not defeat an otherwise properly supported motion for summary judgment, as speculation will not suffice. Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); see also Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001). "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or

rumors," as discrimination law would be unmanageable if disgruntled employees could defeat summary judgment on mere speculations about the defendant's motives. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (quoting Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659 (7th Cir. 1991)).

## B. DISCRIMINATION

Jones's first claim alleges that IKEA discriminated against him on the basis of his race, when IKEA chose to terminate Jones for stealing the company's time. Jones failed to present any direct or circumstantial evidence from which a reasonable jury could draw an inference of discrimination; thus his claim must proceed under the indirect burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under this method, a plaintiff may create a presumption of discrimination by establishing a *prima facie* case of discrimination. Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997). This presumption then shifts the burden to the defendant to put forth a legitimate reason for its actions. Id. From there, the burden shifts back to the plaintiff to show that the defendant's excuse was merely a pretext for discrimination. Id. As to the first step, to establish a *prima facie* case for discrimination, Jones must proffer evidence that: (1) he belongs to a protected class; (2) his performance was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) IKEA sought someone to perform the same work after Jones left the company. Pantoja v. Am. NTN Bearing Mfg. Corp., 495 F.3d 840, 846 (7th Cir. 2007) (citing Matthews v. Allis-Chalmers, 769 F.2d 1215, 1217 (7th Cir. 1985)).

IKEA attacks Jones's claim for discrimination on three grounds. First, IKEA asserts that Jones cannot establish a *prima facie* case of discrimination because he was not meeting the company's legitimate expectations on October 1, 2006 when he failed to record his time

accurately as required by IKEA's company policy. Second, IKEA claims that Jones's *prima facie* case fails because Jones cannot show that IKEA treated him less favorably than other similarly-situated employees. Third, IKEA maintains that even if Jones could establish a prima facie case of discrimination, his claims still fail because the company gave a legitimate, non-discriminatory reason for his termination. The Court agrees with IKEA on its first and third points. Otherwise, the Court declines to discuss IKEA's second argument, except to say that after the Seventh Circuit's decision in Pantoja, the standard under which courts review discrimination claims arising from an employee's termination has altered slightly, as the focus in termination cases has shifted away from whether a plaintiff can point to a similarly situated comparator. 495 F.3d at 845-46.

On the evidence presented, Jones violated IKEA's company policy when he committed what the parties call "time theft." And, each incident leading up to the "time theft" was grounds for termination. The evidence shows and Jones admits that: Jones failed to record his time accurately; he neglected to inform his manger or supervisor of the situation; he took over 35 minutes for lunch; he failed to submit a time adjustment/missing punch form; and he misrepresented the times that he was actually working. Jones does not dispute these incidents, nor does he submit any evidence to refute them. Accordingly, there is no evidence from which a reasonable jury could find that Jones was meeting IKEA's reasonable expectations prior to his termination. Summary judgment is warranted for this reason alone.

Moreover, putting aside Jones's failure to establish a *prima facie* case of discrimination, IKEA offered a legitimate reason for terminating Jones. As discussed above, Jones's supervisor, Nutini, with the help of IKEA's Loss Prevention Department, determined that Jones committed "time theft" when he failed to record his time accurately. Pursuant to IKEA's employee

Handbook, of which Jones was aware, this type of misconduct is grounds for termination. This, on its face, is a valid, non-discriminatory reason for terminating Jones's employment, which, without anything more, negates any discrimination on behalf of IKEA. While Jones may perceive IKEA's conduct as harsh treatment, the propriety of IKEA's business decision to institute its own policy and to terminate Jones for violating it is not an issue properly before the Court. See Petts v. Rockledge Furniture LLC, 534 F.3d 715, 724 (7th Cir. 2008) ("[W]e do not sit as a superpersonnel department with authority to correct an employer's decision that is unwise or unfair.") (quoting Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 697 (7th Cir. 2006)); Gordon v. United Airlines, Inc., 246 F.3d 878, 889 (7th Cir. 2001). Further, Jones's argument is not aided by the fact that IKEA took a similar action against his two lunch companions. Jones does not attempt to argue pretext, thus the Court need not discuss that issue here.

## C. RETALIATION

Jones's second claim is that IKEA unlawfully retaliated against him in response to his prior activity before the EEOC. To establish a prima facie case of retaliation, Jones must show evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 786 (7th Cir. 2007) (quoting Burks v. Wis. Dep't of Transp., 464 F.3d 744, 753 (7th Cir. 2006)). To support his claim, Jones refers to the EEOC action he brought against IKEA in March 2006, in which he alleged that his failure to be interviewed for a promotion was due to his race.

Inherent in this claim, however, is the difficulty in showing that Jones's prior EEOC action was a motivating factor in IKEA's decision to terminate Jones, given the amount of time that lapsed between the two occurrences. See Smith v. Dunn, 368 F.3d 705, 708 (7th Cir. 2004); see also Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1500-01 (7th Cir. 1994)

9

(noting that courts cannot draw strong conclusions of retaliation "from the mere fact that protected speech may have preceded an adverse employment decision."). And, while temporal proximity is commonly used by plaintiffs as evidence of direct retaliation, that argument is often rejected. See, e.g., Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone...does not support a reasonable inference of retaliation."). Here, in light of the significant time difference between the protected activity and the adverse employment action, temporal proximity is insignificant. In the end, Jones is unable to put forth any evidence, either direct or circumstantial, that links his protected activity with IKEA's ultimate decision to terminate his employment. Thus, without anything more, a reasonable jury would be unable to find the required causal link between Jones's prior EEOC claim and the adverse employment action – his termination.

To the extent Jones seeks to establish retaliation under the indirect method, we again apply a burden-shifting analysis. What makes this method unique, however, is that causation is not a part of the *prima facie* burden. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002) ("Plaintiff so proceeding need not show even an attenuated causal link."). Even so, putting causation aside, Jones still cannot refute as pretext IKEA's legitimate reason for terminating his employment. The Court discussed this issue previously, and there is no need to recount the Court's reasoning here. Accordingly, summary judgment is granted in favor of IKEA on Jones's claim of retaliation.

## III. CONCLUSION

For the reasons stated above, Defendant IKEA Illinois LLC's Motion for Summary Judgment against Plaintiff Terrance Jones is granted as to as to Plaintiff's claims for discrimination and retaliation. The Court relinquishes jurisdiction as to Plaintiff's state law claim for defamation.

IT IS SO ORDERED.

ENTER:

_____
CHARLES R. NORGLE, Judge
United States District Court

DATED: 12-4-08